IN THE MATTER OF CHRISTOPHER MICHAEL JENNINGS, CHILD UNDER THE AGE OF 18 YEARS

[No. 1-977A224. Filed April 27, 1978.]

*Gerald R. Thom,* of Jasper, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Respondent-appellant Christopher Michael Jennings appeals from the revocation of his probation by the Harrison Juvenile Court.

## FACTS

In 1974 Jennings and another boy pled guilty to car theft. Both were adjudged delinquents and placed on probation until they attained the age of majority. In 1976 Jennings and another boy were charged in Dubois County with inflicting injury during a robbery. As a result of the charge pending in Dubois County a petition was filed by William C. Phillips, the chief probation officer in Harrison County, to revoke Jennings' probation.

A hearing to determine whether or not Jennings' probation should be revoked was set for anuary 6, 1977. On that day Jennings and his father Owen Jennings appeared without counsel. The court informed Jennings that he had a right to have counsel present at the hearing. Owen Jennings then made a motion for continuance so that he could obtain counsel for his son.

Due to inclement weather and the ill health of Owen Jennings the revocation hearing was not held until April 11, 1977. On that date Jennings and his father again appeared without an attorney to represent Jennings. Owen Jennings moved for a continuance so that he could obtain counsel for his son. He told the court that Jennings' counsel lived in Jasper and would not make the trip to Corydon to represent Jennings in the revocation hearing until Jennings paid him $300.00. Owen Jennings told the court that neither he nor his son had the $300.00 at that time.

The court told Jennings that he had been given ample time to secure the services of an attorney or to inform the court that he could not afford one; since he had done neither, Jennings was required to have his revocation hearing proceed without the assistance of counsel.

At the hearing evidence was introduced which showed that Jennings had been placed on probation by the Dubois Juvenile Court as a result of Jennings' part in inflicting an injury during a robbery. Jennings told the Harrison Juvenile Court that he was present when the man he was alleged to have robbed was injured but that he did not hurt the man in Dubois County. He volunteered to take a polygraph examination to prove that he was telling the truth. The court continued the cause to allow Jennings to take a polygraph test before deciding whether or not to revoke Jennings' probation.

Jennings took a polygraph examination which showed that he was lying when he said that he did not hurt the man or participate in the robbery. The Harrison Juvenile Court then revoked Jennings' probation and, because Jennings was 18 at the time, sentenced him to one year of incarceration at the Indiana State Farm.

## ISSUES

Although other issues were raised in this appeal, because we have determined herein that the trial court committed reversible error, it is necessary for us to discuss only the following issues:

1.    Whether the court deprived Jennings of his constitutional right to due process of law.

2.    Whether the court erred in sentencing Jennings to serve one year at the Indiana State Farm.

## DISCUSSION AND DECISION

*Issue One*

Jennings contends that the trial court deprived him of his constitutional right of due process of law when it failed to inform him of his right to have an attorney appointed to represent him, if he could not afford to hire one. We agree with Jennings' contention.

Concerning the constitutional rights of juveniles, the United States Supreme Court in *In Re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and our Supreme Court in *Bible v. State* (1970), 253 Ind. 373, 254 N.E.2d 319, held that although a juvenile is not entitled to all the constitutional guarantees which are afforded to adult criminals, they are nonetheless entitled to due process and fair treatment, and that such due process and fair treatment would include notification to the child and his parents of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel would be appointed to represent the child.

In the case at bar the record shows that the Harrison Juvenile Court informed Jennings of his right to be represented by counsel, but did not inform Jennings of his right to have an attorney appointed for him if he was unable to afford one. The record shows the Jennings was not

represented by counsel at the revocation hearing primarily because he could not pay his lawyer's required fee. Jennings should have been informed that the court would appoint an attorney for him if he was unable to afford one. Under the circumstances in the case at bar, the failure to so inform Jennings constituted a denial of due process of law.[1]

Such a denial of due process and fair treatment constitutes fundamental error which can be raised for the first time on appeal.[2] Therefore, even though Jennings did not allege that he was denied due process in his motion to correct errors, such allegation of error can properly be considered by this court in that we have determined that the error was fundamental error. Therefore, the order of the trial court revoking probation must be reversed and a new hearing must be held wherein Jennings is previously informed of his right to be represented by counsel of his choice or, if he cannot afford counsel, he must be informed of his right to have counsel appointed for him.

---

1. In *Wilson v. State* (1943), 222 Ind. 63, 51 N.E.2d 848, 854-855, our Supreme Court stated:

"Article 1, § 13 of the Constitution of Indiana, guarantees to an accused the right of counsel. The same right is guaranteed by the Sixth Amendment of the Constitution of the United States. It was held in Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, that the specific provision of Article 6 did not exclude that right from the protection of the 'due process' clause of the Fourteenth Amendment. In Johnson v. Zerbst, Warden, 1937, 304 U.S. 358, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, 146 A.L.R. 357, the court said: 'If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.'

In Knox County Council v. State ex rel. McCormick, 1940, 217 Ind. 493, 29 N.E.2d 405, 412, 130 A.L.R. 1427, . . . the opinion states: '. . . This court has consistently held that, under the Constitution of Indiana, there can be no valid judgment against a defendant in a criminal case unless he has been offered, and, if so desired, provided with, adequate counsel.' "

2. See *Johnson v. State* (1976), 265 Ind. 470, 355 N.E.2d 240. Also in *Malo v. State* (1977), 266 Ind. 157, 361 N.E.2d 1201, 1204-5, it states:

". . . Defendant correctly asserts that fundamental error is an exception to the rules requiring proper in-trial objection as a prerequisite to raising the issue on appeal, citing *Kleinrichert v. State* (1973) 260 Ind. 537, 297 N.E.2d 822. That the error complained of relates to the violation of a right guaranteed by the constitution does not, in and of itself, render it fundamental error requiring us to go against well established rules of procedure. Rather, fundamental error is error which, if not rectified, would deny the appellant 'fundamental due process.' *Webb v. State* (1972) 259 Ind. 101, 284 N.E.2d 812. . . ."

*Issue Two*

For the reason that the question of law which is raised in Issue Two might arise again at the new revocation hearing we have chosen to write upon that issue. Jennings contends that the Harrison Juvenile Court erred in sentencing him to serve one year at the Indiana State Farm, an adult corrections institution. We agree.

IC 1971, 11-3-1-2 (Burns Code Ed.) provides that only boys between the ages of 7 and 18 can be admitted to the Indiana Boys' School. Therefore, the trial court properly concluded that the Boys' School was not a suitable institution for Jennings to serve his one year of confinement in that Jennings was 18 when he was ordered to be incarcerated.[3] The trial court reasoned that the Indiana State Farm was the only suitable institution at which Jennings could be legally incarcerated. However, a careful reading of IC 1971, 11-2-5-4 (Burns Code Ed.), the statute which identifies those persons who can legally be sent to the State Farm, show that Jennings could not legally have been sent to the State Farm. IC 11-2-5-4, *supra,* reads in part as follows:

> "When such State Farm shall be equipped with buildings and other facilities sufficient in the opinion of its board of trustees to receive prisoners, such board of trustees shall notify the governor and upon such notification the governor shall by proclamation declare the State Farm ready to receive prisoners; and thereafter it shall be the duty of all judges of circuit, superior, criminal and city courts to commit thereto so far as the capacity of the institution will permit, all male persons who are above the age of commitment to the Indiana Boys' School, *who shall have been convicted of the violation of any criminal law of this state now in force or hereafter enacted,* or of any ordinance now in force or hereafter enacted, the punishment for which consists or shall consist of imprisonment in any county jail or workhouse. . . ." (Our emphasis)

---

3. It should be noted that Jennings was under 18 years of age when he committed his first act of delinquency. Therefore, the Harrison Juvenile Court properly obtained jurisdiction over him. See IC 1971, 31-5-7-13 (Burns Supp. 1977). When Jennings' probation revocation proceedings terminated, Jennings was 18 years of age. The juvenile court still had jurisdiction over him because a juvenile court maintains jurisdiction of a child over whom jurisdiction was obtained until the child turns 21, is discharged, or is committed to a state institution. See IC 1971, 31-5-7-7 (Burns Code Ed.).

It was not proper to commit Jennings to the State Farm, even though he was above the age of commitment to the Boys' School, because Jennings had not been convicted of a violation of the criminal law. He had merely been adjudged a juvenile delinquent by the Harrison Juvenile Court. IC 1971, 31-5-7-15 (Burns Supp. 1977) provides in part:

"No adjudication upon the status of any child in the jurisdiction of the [juvenile] court shall operate to impose any of the civil disabilities ordinarily imposed by conviction, *nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in section 14[31-5-7-14] and section 24[31-5-7-24] of this chapter.* The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service examination, appointment or application." (Our insert) (Our emphasis)

Jennings was adjudicated a delinquent by the juvenile court and was not convicted of a crime pursuant to IC 1971, 31-5-7-14 (Burns Supp. 1977), which, under certain circumstances, allows the juvenile court to waive a juvenile's case into the adult criminal court, or IC 1971, 31-5-7-24 (Burns Code Ed.), which permits the juvenile court to find a person to be in contempt of court for failure to obey a court order. Since Jennings had not been convicted of a violation of the criminal law, the court erred in sending him to the State Farm.

A problem is presented which can only be solved by the legislature. There seems to be no suitable institution provided for the commitment of a young person who is adjudged to be a delinquent by the juvenile court, but is too old to be sent to the Boys' School or Girls' School. It is correct that options other than commitment to an institution are available for the juvenile court to utilize in dealing with a juvenile. See IC 31-5-7-15, *supra*, and IC 31-5-7-24, *supra*, where a court order has been violated. However, this court is of the opinion that there are times when commitment to a suitable public institution would be the best alternative where such commitment would be in the best interest of the young person and of society in general. A place should be provided where young people, who have been adjudged to be delinquents by the juvenile court, but are too old for the Boys' School or Girls'

School, can be committed to a state institution. Under our present law nothing short of action by our legislature can provide such a place.

Under the circumstances in the case at bar Jennings cannot be institutionalized in a public facility for violating the terms of his probation, unless contempt proceedings are brought against him for failing to obey the court's order, which was made when he was placed on probation. See IC 31-5-7-24, *supra,* and *Atkins v. State* (1972), 259 Ind. 596, 290 N.E.2d 441.

In conclusion we simply reiterate the words of our Supreme Court in *State ex rel. Moore v. Superior Court of Shelby County* (1975), 262 Ind. 588, 321 N.E.2d 204, 205, where it states:

> ". . . We need not belabor the question where it is apparent that nothing but an unhappy solution is permissible. This court does not make the laws applicable to juveniles of the age of the delinquent in this case. The Legislature has those problems. Not all solutions to our social problems lie with the judiciary."

Reversed and remanded for further proceedings not inconsistent with this opinion.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 375 N.E.2d 258.