v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 50A03–0107–JV–239.

Court of Appeals of Indiana.

Feb. 19, 2002.

Mary Lou Connolly, Plymouth, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott A. Kreider, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

E.M.W. challenges her placement in an out-of-state juvenile residential facility. Specifically, she contends that the trial court abused its discretion by placing her in an Arizona facility when similar facilities exist in the State of Indiana. Because we find that the trial court did not abuse its discretion in sentencing E.M.W. to the Arizona facility, we affirm.[1]

---

1. E.M.W. also argues that the State's failure to provide her with the pre-dispositional report prior to her dispositional hearing and failure of the report to strictly comply with statutory requirements deprived her of the opportunity to prepare an argument for alternative placement. Because E.M.W. failed to raise the deficiencies with the report during her hearing or ask for a continuance to prepare a rebuttal to the report's recommenda-

## Facts and Procedural History

After committing the status offenses of being a runaway and truancy, the juvenile court adjudicated E.M.W. a delinquent and placed her on probation for one year. Within one month of being placed on probation, E.M.W. violated her probation by illegally consuming alcohol. This violation resulted in the filing of a new delinquency petition against E.M.W., as well as a motion to revoke her probation. The motion to revoke E.M.W.'s probation was later amended to add the allegations that E.M.W. tested positive for marijuana and that E.M.W. had been in the company of a person with a criminal record.

E.M.W. admitted to the charges at her dispositional hearing. The juvenile court found E.M.W. to be a delinquent and in violation of her probation. The pre-dispositional report and the written recommendations of the Local Coordinating Committee (LCC) and the probation department were provided to the court and the parties during the hearing.[2] The State presented testimony from Nannette Fredericks, which explained the rationale of the LCC's recommendation to the court that E.M.W. be placed in a juvenile facility in Arizona, rather than in an Indiana facility. Following the recommendations of the LCC and the probation department, the juvenile court entered a Dispositional Order that placed E.M.W. on probation until the age of eighteen, made E.M.W. a ward of Marshall County for the purposes of placement at Mingus Mountain residential treatment facility, and placed her in detention while awaiting admission to Mingus Mountain. Thereafter, E.M.W. filed a motion to cor-rect errors and a motion to modify the dispositional order. The juvenile court summarily denied both motions. This appeal ensued.

## Discussion and Decision

■■■ The choice of a specific disposition for a juvenile adjudicated to be a delinquent is within the discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the safety of the community, and the code's policy of favoring the least harsh disposition. *See* Ind.Code § 31–34–19–6; *A.D. v. State*, 736 N.E.2d 1274, 1276 (Ind.Ct.App. 2000). We may overturn E.M.W.'s disposition order only if we find that the juvenile court has abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *A.D.*, 736 N.E.2d at 1276.

■■ E.M.W. claims that the trial court abused its discretion by placing her in a juvenile residential treatment facility in Arizona instead of placing her in a facility in Indiana. In making this claim, E.M.W. directs our attention to Indiana Code § 31–37–17–4. According to this code section,

> If consistent with the safety and best interest of the child and the community, the person preparing the [predispositional] report shall recommend care, treatment, rehabilitation, or placement that:
>
> (1) is:

tions, we find that she has waived review of this issue. Further, because we have no evidence before us that E.M.W. has been released from Mingus Mountain, we need not address the mootness issue raised by E.M.W. in her brief.

**2.** The record reveals that the LCC provided E.M.W. with its recommendations prior to the trial. Moreover, we note that the probation department's recommendations and the recommendations made in the pre-dispositional report mirrored the LCC's recommendations.

(A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind.Code § 31–37–17–4.

Both the LCC and the probation department recommended that E.M.W. be sent to Mingus Mountain. Nanette Frederick explained the rationale for the LCC's recommendation that E.M.W. be placed at Mingus Mountain at the dispositional hearing. Frederick testified that the LCC felt that E.M.W. would receive much better treatment and have a better possibility of being successfully rehabilitated at Mingus Mountain based on the county's much higher rate of success at Mingus Mountain as compared to White's Residential and Family Services in Wabash, Indiana, a juvenile treatment center that the LCC considered as an alternative placement. In particular, Frederick noted that White's did not have adequate structure or a treatment program to meet E.M.W.'s needs. Further, she identified that White's lacked the type of vocational program that was available at Mingus Mountain. Moreover, Frederick testified that another alternative considered, a holdover home, would not provide the structure or supervision that E.M.W. required. Frederick also emphasized that E.M.W.'s mother's resistance to her daughter being on probation and the negative impact such an attitude has had on E.M.W.'s compliance with the terms of her probation was a deterrent to E.M.W.'s successful rehabilitation. Finally, Frederick reported that the LCC determined that E.M.W. was in need of a more restrictive environment because of her attitude and her contact with local members of the community who have criminal records. Based on these circumstances, the juvenile court could reasonably conclude that it was in E.M.W.'s and the community's best interest to be removed from her home and placed in a facility where she could receive treatment free from the interference of these negative influences.

While we acknowledge that E.M.W.'s placement at Mingus Mountain may not have been the least restrictive or disruptive of family life, the decision to place E.M.W. at that facility was based on a consideration of the best interest of E.M.W. and the community. Because Indiana Code § 31–37–17–4 recognizes that a reasonable opportunity for parental participation need only be provided if consistent with the safety and best interest of the child and community and a representative from the LCC presented the court with evidence that it was in the best interest of E.M.W. and the community that E.M.W. not be placed locally, we conclude that the juvenile court did not abuse its discretion by placing E.M.W. at Mingus Mountain.

Judgment affirmed.

FRIEDLANDER, J., and BARNES, J., concur.